UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDRE A. HARDEN-RIVERA,        )
                                      )
        Plaintiff,            )
                                      )     Case No. 24-cv-11842
      v.                   )
                                      )     Judge Sharon Johnson Coleman
VILLAGE OF COAL CITY, ILLINOIS, et al.,  )
                                      )
        Defendant.       )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andre A. Harden-Rivera alleges that he was illegally stopped and detained by police officers in the Coal City, Illinois. He has brought suit against the Village of Coal City ("Coal City") and several others, including two attorneys, alleging that the Defendants infringed on his constitutional rights in various ways during and following the stop. One of the attorneys, Kathleen M. Kunkle, has filed a motion to dismiss all claims against her pursuant to Rule 12(b)(6). The other, Assistant State's Attorney John Kogut, was dismissed *sua sponte* by this Court because of prosecutorial immunity. Mr. Harden-Rivera subsequently filed a motion requesting that this Court reconsider its dismissal of Mr. Kogut. Because the motions touch on some related issues of fact and law, the Court will address them together in this opinion. For the foregoing reasons, the Court grants Ms. Kunkle's motion to dismiss [84] and denies Mr. Harden-Rivera's motion to reconsider [99]. Defendant Kunkle will be dismissed with prejudice, and Defendant Kogut will remain dismissed with prejudice.

**BACKGROUND**

**Case Background**

The following facts are drawn from Mr. Harden-Rivera's amended complaint, dkt. 31 [hereinafter "Am. Compl."], and they are presumed to be true for the purposes of adjudicating both

motions. Because the instant motions pertain only to Ms. Kunkle and Mr. Kogut, the Court will only briefly describe the broader background of the case.

At about 11pm on April 4, 2024, Defendant Officer Goron of the Coal City Police Department detained Mr. Harden-Rivera on suspicion of driving with suspended license. Officer Goron requested to see Mr. Harden-Rivera's identification, but Mr. Harden-Rivera refused, believing that the officer had not issued a lawful command. Officer Goron and Defendant Officers McKim and Stadler then arrested Mr. Harden-Rivera and conducted a search of his person and his vehicle, to which Mr. Harden-Rivera did not consent. The officers discovered a handgun in Mr. Harden-Rivera's glove box. Dispatch confirmed that Mr. Harden-Rivera had a valid FOID card for the gun, but the officers booked it into evidence and transported Mr. Harden-Rivera to the Coal City Police Department. He was booked on charges of obstructing identification and driving on a suspended license, and then released about an hour later. In the following weeks, an evidentiary dispute emerged after the Coal City Police Department destroyed the body-worn camera footage from the arresting officers, despite having received a FOIA request for the evidence and despite having been on notice of the charges against Mr. Harden-Rivera.

On October 7, 2024, Mr. Harden-Rivera filed a motion to dismiss his criminal charges. On November 18, 2024, Mr. Harden-Rivera filed a civil complaint before this Court in the instant case. At that time, the case defendants were Coal City; Chief of Police Christopher Harseim; Officers Connor Goron, Kirstyn McKim, and Nathan Stadler; and Bonnie Wieczorek, FOIA Officer for the Coal City Police Department. On January 31, 2025, Ms. Kunkle filed an appearance in the instant civil case as counsel for Defendant Coal City. On February 3, 2025, Mr. Harden-Rivera appeared at Grundy County Courthouse for a hearing in his state criminal case. Before the hearing, Assistant State's Attorney Kogut initiated a pre-hearing conference with Mr. Harden-Rivera, which concluded with Mr. Kogut telling Mr. Harden-Rivera that "he would be dismissing all the charges because Plaintiff is '*a*

*pain in the ass*'" and that Mr. Harden-Rivera was free to leave. Am. Compl. ¶ 63. Mr. Harden-Rivera took Mr. Kogut at his word and left the courthouse without attending the hearing. Later that day the charges were dismissed with a disposition of *nolle prosequi*.

The next day (February 4, 2025), Ms. Kunkle filed a second appearance in the instant civil case on behalf of the individual defendants named in the initial complaint. Additionally, Mr. Kogut filed a motion to reinstate the charges he had dismissed the previous day. On February 7, 2025, Ms. Kunkle represented to this Court that the State intended to reinstate Mr. Harden-Rivera's criminal charges, even though the public docket still showed the charges as dismissed and Mr. Harden-Rivera himself had not yet received notice of the State's intention to reinstate. Mr. Harden-Rivera believes that Ms. Kunkle's apparent knowledge of the State's prosecution strategy implies that she colluded with Mr. Kogut to reinstate the charges against Mr. Harden-Rivera so as to preserve a legal defense under *Heck v. Humphrey*, 512 U.S. 477 (1994), for the instant case before this Court.[1] On February 19, 2025, Mr. Kogut filed an additional charge for resisting arrest against Mr. Harden-Rivera, despite allegedly having no new complainant or evidence to support the additional charge.

**Procedural History**

On April 21, 2025, Mr. Harden-Rivera filed an amended complaint with this Court, adding Ms. Kunkle and Mr. Kogut as defendants, as well as Grundy County. Ms. Kunkle subsequently withdrew as defense counsel. On August 26, 2025, the state court again dismissed, this time with prejudice, the pending criminal charges against Mr. Harden-Rivera. On November 13, 2025, Ms. Kunkle filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim against her. Dkt. 84

---

[1] *Heck* bars consideration of a § 1983 claim where a ruling for the Plaintiff would require a court to contradict a state criminal charge or conviction. 512 U.S. at 486–88. Here, Mr. Harden-Rivera was unable to pursue his § 1983 claims while his state criminal charges were still pending, owing to the *Heck* bar. *See* dkt. 51.

[hereinafter "MTD"]. The parties timely filed their response and reply briefs, and the Court took the motion under consideration following oral arguments held on January 20, 2026.

On December 3, 2025—while Ms. Kunkle's motion was still being briefed—this Court moved *sua sponte* to dismiss Mr. Kogut as a defendant with prejudice. Dkt. 89. The Court found that Mr. Kogut was entitled to prosecutorial immunity and that "there are no set of circumstances under Federal or Illinois law that could expose Mr. Kogut to liability for his decision to continue the State's case against Mr. Harden-Rivera." *Id.* On December 24, 2025, Mr. Harden-Rivera filed a motion under Rule 54(b) requesting that the Court reconsider its *sua sponte* dismissal of Mr. Kogut. Dkt. 99 [hereinafter "MTR"]. The Court set a briefing schedule, with Mr. Kogut's response brief due by January 27, 2026. Dkt. 100. However, Mr. Kogut never filed his response, and neither he nor his attorney have ever appeared for this case. On February 6, 2026, the Court declared the motion fully briefed and announced that it would dispose of both the motion to dismiss and the motion to reconsider in the same opinion. Dkt. 109.

## LEGAL STANDARD

### Motion to Reconsider

It is well-established that in determining whether to grant a motion to reconsider, the Court retains sound discretion. *Caisse v. Natioanle de Credit v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). "Motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments, and such motions are not the appropriate vehicles for tendering new legal theories for the first time." *In re Oil Spill by the "Amoco Cadiz,"* 794 F. Supp. 261, 267 (N.D. Ill. 1992), aff'd, 4 F.3d 997 (7th Cir. 1993). A motion to reconsider serves a limited function and should only be presented when there has been a significant change in law or facts after the issue is presented to the Court, or the Court has "patently misunderstood a party," has "made a decision outside the adversarial issues presented" to it or has "made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales,*

*Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motions to reconsider should be equally rare." *Id.* (internal quotations omitted).

**Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). To survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

### I.    Motion to Reconsider

The Court will begin with Mr. Harden-Rivera's motion to reconsider. The Court's order dismissing Mr. Kogut *sua sponte* reads as follows:

> On review of Plaintiff Andre Harden-Rivera's Amended Complaint, the Court moves *sua sponte* to dismiss State's Attorney John Kogut as a Defendant. Mr. Kogut possesses absolute immunity under federal law "for the initiation and pursuit of a criminal prosecution." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). The same is true under Illinois law, and would be true "even when the prosecutor is motivated by 'solely malicious reasons.'" *Kirichkow v. Bruscato*, 2025 IL App (4th) 240552, 24, 262 N.E.3d 683, 688, *appeal denied*, No. 131716, 2025 WL 2720589 (Ill. Sept. 24, 2025). As there are no set of circumstances under Federal or Illinois law that could expose Mr. Kogut to liability for his decision to continue the State's case against Mr. Harden-Rivera, the Court dismisses Mr. Kogut as a Defendant with prejudice.

Dkt. 89. Mr. Harden-Rivera does not dispute the general principle of prosecutorial immunity, but he contends that the Court erred by treating such immunity as "categorical" rather than "function-specific." MTR *2 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–73 (1993); *Bianchi v. McQueen*, 818 F.3d 309, 316–17 (7th Cir. 2016)). He also argues that the Court's *sua sponte* dismissal, without an

opportunity for Mr. Harden-Rivera to weigh in, is disfavored under Seventh Circuit precedent. *Id.* at *3 (citing *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510 (7th Cir. 2015), *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013).

The Court concedes that it should have explained in greater detail the functional considerations that led to its decision to dismiss Mr. Kogut. However, while those considerations did not appear in the text of the order, the Court did take account of them when making its determination. Regardless, the error is a harmless one, because a functional analysis convincingly shows that all of Mr. Kogut's actions were squarely within the ambit of his prosecutorial decision making.

In his motion to reconsider, Mr. Harden-Rivera claims that he "does not seek to impose liability on Kogut merely because he chose to file, maintain, or dismiss charges." MTR ¶ 11. Instead, he argues that "Kogut engaged in out-of-court conduct and extra-judicial steps that are plausibly investigative or administrative, and non-advocative for the State of Illinois." *Id.* ¶ 12. Mr. Harden-Rivera contends that Mr. Kogut's initiation of a pre-hearing conference, in which Mr. Kogut engaged Mr. Harden-Rivera "in casual conversation" and ultimately promised to drop the charges, fell outside of Mr. Kogut's duties as a prosecutor and instead constituted an administrative or investigatory act for which Mr. Kogut is not immune. *Id.* ¶ 16. He similarly argues that Mr. Kogut's alleged collusion with Ms. Kunkle constituted an administrative "agreement to manipulate the pendency of criminal charges so that the criminal process itself could be deployed as a litigation tool to delay, obstruct, or impair Plaintiff's civil-rights litigation"; and that Mr. Kogut's later decision to add a resisting arrest charge, without a new criminal complaint or any new evidence, must be the result of non-advocative investigatory activity. *Id.* ¶¶ 19–20. Mr. Harden-Rivera argues that these acts fall outside of the scope of prosecutorial immunity and therefore expose Mr. Kogut to potential liability. *Id.*

The Court disagrees. Even taking all of Mr. Harden-Rivera's allegations and inferences as absolutely true, the described behavior all falls within the scope of prosecutorial immunity. The pre-

hearing conference between Mr. Harden-Rivera and Mr. Kogut does not seem to the Court to have been investigative in any sense. As the Supreme Court noted in *Buckley*, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial" are encompassed by the scope of absolute immunity. 509 U.S. at 273. Here, the conference represented a classic attorney's activity, namely, trying to get a sense of who opposing counsel (*i.e.* Mr. Harden-Rivera) will be, in preparation for a hearing and a potential trial down the road. Moreover, even if the conspiracy occurred as alleged, it is unclear how Mr. Kogut's pre-hearing conference constitutes an action taken in furtherance of that conspiracy. Additionally, the alleged collusion with Ms. Kunkle, even if true, cannot be disentangled from Mr. Kogut's decision to reinstate the charges—a decision that Mr. Harden-Rivera concedes falls within the scope of immunity. MTR ¶¶ 11, 34. Mr. Harden-Rivera claims that Mr. Kogut and Ms. Kunkle conspired to "manipulate the pendency of criminal charges so that the criminal process itself could be deployed as a litigation tool to delay, obstruct, or impair Plaintiff's civil-rights litigation." *Id.* ¶ 19. But even if that description is factually correct, it is still only a description of an (admittedly malicious) decision to bring charges against Mr. Harden-Rivera—a decision for which Mr. Kogut is absolutely immune. Mr. Harden-Rivera identifies no precedent indicating otherwise.

Finally, while it is true that investigative activities may fall outside the scope of a prosecutor's immunity, *see Buckley*, 509 U.S. at 273–78; *Burns v. Reed* 500 U.S. 478, 492–96 (1991), Mr. Harden-Rivera alleges that the resisting arrest charge "lacked a substantive complainant submission from Coal City police and was not supported by probable cause or new evidence." MTR *5 (citing Am. Compl. ¶¶ 68–69, 73–75, 169). In other words, Mr. Harden-Rivera alleges that Mr. Kogut added the charge *without conducting an investigation*. And even if there was an investigation, there is no allegation of an illegal act being committed during it. As such, Mr. Harden-Rivera's complaint shows only that Mr. Kogut may have filed a completely frivolous charge. If true, that would certainly be improper, but it

would still not expose him to tort liability under Federal or Illinois law for the decision. It could potentially serve as a basis for discipline to be imposed by the courts of Illinois, *see* ILCS S Ct R. Prof. Conduct 3.8; ILCS S. Ct. Rule 770, but that is a different matter. As such, the Court concludes that Mr. Kogut's dismissal was and is proper, because all his alleged activities fall easily within the scope of prosecutorial immunity, even when drawing every possible inference in Mr. Harden-Rivera's favor.

Finally, while it is true that *sua sponte* dismissals without first seeking the positions of the parties are disfavored, the lack of favor only extends to cases where amendments could potentially cure the legal defect. *Runnion*, 786 F.3d at 519–520. In contrast, "Where it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend[.]" *Id.* at 520. Here, the law is clear that even if Mr. Kogut colluded with Ms. Kunkle in exactly the manner alleged, and even if he did so for purely unjust and malicious motives, he would *still* be immune from all charges. As such, the Court stands by its previous statement that "there are no set of circumstances under Federal or Illinois law that could expose Mr. Kogut to liability[.]" Dkt. 89. Accordingly, the Court denies Mr. Harden-Rivera's motion to reconsider [99]. Mr. Kogut remains dismissed with prejudice as a defendant.

## II.    Motion to Dismiss

Mr. Harden-Rivera has accused Ms. Kunkle of violating his First and Fourteenth Amendment rights to speak without fear of state retaliation and to have access to federal courts; and of having conspired with Mr. Kogut to deprive Mr. Harden-Rivera of his civil rights. Am. Compl. ¶¶ 123–130, 155. The applicable cause of actions for these accusations is provided by 42 U.S.C. § 1983. Additionally, Mr. Harden-Rivera describes several other Counts as being against "all Defendants"; however, the applicability of those Counts to Ms. Kunkle is not clear. Ms. Kunkle argues that all counts against her should be dismissed. The Court agrees.

*A. Section 1983 Charges*

Ms. Kunkle argues that the § 1983 charges must be dismissed because she is not a proper defendant under that statute, and also because Mr. Harden-Rivera did not suffer any injury from the alleged conspiracy. The Court finds that, under Supreme Court precedent, Ms. Kunkle *is* a proper defendant under § 1983; however, she is correct that Mr. Harden-Rivera has not shown a constitutional injury resulting from the alleged conspiracy. The Court therefore agrees that the § 1983 charges against Ms. Kunkle must be dismissed.

### 1.   The State Actor Requirement

By its own terms, 42 U.S.C. § 1983 only applies to those "acting under color of state law." This means that the only proper § 1983 defendants are those who are acting on behalf of a state, a category that is mostly comprised of non-federal government employees. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999). As an Assistant State's Attorney, Mr. Kogut is a proper defendant under § 1983, although (as discussed above) he nevertheless has immunity under common law for his prosecutorial decisions. But Ms. Kunkle is a private attorney, not a government employee, and § 1983 does not reach "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co.,* 526 U.S. at 50 (internal quotation marks and citations omitted). True, Ms. Kunkle was representing a municipality, but that alone is not enough to transform her into a state actor. *London v. RBS Citizens*, N.A., 600 F.3d 742, 746 (7th Cir. 2010) ("Misuse of a state law by a private party… does not satisfy [the § 1983 state actor] requirement." (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))); *see also Quasius v. Dewane*, No. 25-CV-1149, 2025 WL 2409759, *3 (E.D. Wis. Aug. 20, 2025) ("That a private individual employs the machinery of state law to allegedly infringe on rights protected

by the constitution does not render the action 'under color of' state law for purposes of 42 U.S.C. § 1983.")[2]

However, Mr. Harden-Rivera argues that "private parties may be liable under § 1983 when they are willful participants in joint action with the State or its agents or when they conspire with state officials to deprive a person of federal rights." Pl. Resp. ¶ 19 (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Tower v. Glover*, 467 U.S. 914, 920–23 (1984)). As such, he claims that Ms. Kunkle should be treated as a state actor for § 1983 purposes because of her alleged conspiracy with Mr. Kogut. *Id.* ¶¶ 18–27. Mr. Harden-Rivera is correct that certain conspiratorial acts can extend § 1983 liability to those who would not otherwise be deemed to have acted under color of state law, *Dennis*, 449 U.S. at 27–28, and Ms. Kunkle does not dispute that specific point. Nevertheless, she claims that such liability can only be extended if the government employee co-conspirator in question is not immune from suit. MTD *9–11.

More than fifty years ago, the Seventh Circuit did indeed rule that "it has been frequently stated that allegations of conspiracy between private persons and public officials who are themselves immune from liability under the facts alleged are insufficient to establish liability of the private persons under color of state law for purposes of the Civil Rights Act." *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975). But Mr. Harden-Rivera claims that Ms. Kunkle's argument does not comport with (somewhat) more recent Supreme Court precedent establishing, in Mr. Harden-Rivera's words, that immunity is "a personal shield" that "does not erase the existence of state action, nor does it automatically immunize private co-participants who act jointly with state officials." *Id.* ¶ 27. Mr. Harden-Rivera cites to *Dennis*, a Supreme Court case post-dating *Hansen*. Although the import of the combined precedents of the Supreme Court and the Seventh Circuits can be difficult to sort out, the

---

[2] The Court observes that Ms. Kunkle has repeatedly cited this case incorrectly as *Jeremy v. Quasius*, rather than using its proper caption, *Quasius v. Dewane*. The mistake apparently stems from the name of the plaintiff in that case, Jeremy V. Quasius.

Court believes that Mr. Harden-Rivera has the better argument on this front. In *Dennis*, the plaintiffs alleged that the opposing litigants in a previous case had corruptly conspired with a state judge by bribing him to rule in their favor. 449 U.S. at 26–27. The judge was absolutely immune from suit, but the Supreme Court held that "the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability." *Id.* at 28. This Court believes that the logic of *Dennis* is also applicable to Mr. Harden-Rivera's fairly analogous case, and to the extent that there is a conflict between *Dennis* and *Hansen*, *Dennis* must prevail.

Ms. Kunkle cites a large number of cases to argue that Kogut's immunity should bar consideration of a § 1983 case against her. However, the cited cases do not say what she wants them to say. She primarily relies on *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975). However, that case precedes *Dennis*, and, in any case, did not actually base its affirmation of the district court's dismissal on the government employee's immunity. *Id.* at 878. She also cites *Alarm Detection Sys. v. Vill. of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019), but that case *did not* exclude a defendant from liability on the basis of co-conspirator immunity. To the contrary, the Seventh Circuit assumed without deciding that the plaintiff's conspiracy allegations "may fix a § 1983 problem" for the plaintiff's case against the private defendants—it just didn't fix the *other* problems with the plaintiff's case. *Id.* at 825. Ms. Kunkle also refers to *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007), in which the Seventh Circuit found no § 1983 liability for private actors when the alleged governmental co-conspirator possessed qualified immunity from suit. However, as the Seventh Circuit explained, the issue under consideration in that case was whether probable cause had existed to arrest the plaintiff. *Id.* at 764 n.4. The court found that probable cause did exist; as such, the alleged co-conspirator police officer "did not violate Reynolds' constitutional rights." *Id.* In other words, the plaintiff's case had to be dismissed not because

the private defendant had immunity by proxy, but rather because there wasn't a constitutional violation in the first place.

Ms. Kunkle also cites district court opinions that, in addition to being non-precedential, turned primarily on whether the plaintiff had plausibly alleged a conspiracy theory, rather than whether immunity extended to a non-government co-conspirator. *See Herndon v. S. Bend Sch. Corp.*, No. 3:15-cv-587, 2016 WL 2755586, at *3 (N.D. Ind. May 12, 2016); *Norris v. Jewel-Osco*, 2016 U.S. Dist. LEXIS 181537 (N.D. Ill.) (Durkin, J.); *see also Quasius*, 2025 WL 2409759 at *3 (complaint dismissed primarily because none of the alleged co-conspirators were likely government employees). Here, however, Mr. Harden-Rivera has plausibly alleged that a conspiracy existed. To be sure, he has not *proven* his claim of conspiracy, but that is not required to survive a motion to dismiss. Here, the circumstances surrounding Mr. Kogut's abrupt reinstatement of the charges against Mr. Harden-Rivera, put together with the timing of Ms. Kunkle's appearances in the instant case and her apparent knowledge of the criminal case against Mr. Harden-Rivera, possibly in excess of what Mr. Harden-Rivera himself had access to at the time, all give rise to a plausible allegation of conspiracy.[3] Except for one conclusory statement in her reply brief, dkt. 105 at *3, Ms. Kunkle has not argued otherwise.

Finally, Ms. Kunkle argues in her reply brief that *Dennis* is distinguishable from the instant case. In *Dennis*, the private parties "persuaded the immune judge to exercise his jurisdiction corruptly." 449 U.S. at 27. Ms. Kunkle claims that the logic of *Dennis* cannot apply here "because Kunkle had no role in Plaintiff's criminal prosecution" and because "Plaintiff has not alleged, and cannot allege, that Kunkle persuaded Kogut to prosecute Plaintiff illegally or unconstitutionally outside the scope of the

---

[3] Ms. Kunkle has filed a sworn statement before this Court stating that all the information she presented at the February 7, 2025 hearing was available at the time on the state court's online public docket. MTD, Ex. A ¶ 11. Because the instant motions require the Court to take all well-pleaded allegations in Mr. Harden-Rivera's complaint as true, Ms. Kunkle's statement will not be taken into consideration for the purpose of deciding these motions.

normal prosecutorial process." Dkt. 105 at *5. But, in fact, that is *exactly* what Mr. Harden-Rivera has alleged. *See, e.g.*, Am. Compl. ¶ 82 ("Plaintiff alleges that Defendant Kunkle advised Assistant State's Attorney John Kogut that maintaining pending charges was strategically important for her defense in the civil case, since the *Heck* doctrine would potentially block or limit Plaintiff's claims if criminal liability was still unresolved."). And even if Mr. Harden-Rivera had not alleged precisely what Ms. Kunkle erroneously claims he did not and could not allege, her conclusion that the applicability of *Dennis* hinges on whether the private party convinced the immune party to act corruptly is without explanation or case law support. The Court therefore finds that, under *Dennis*, Ms. Kunkle is a proper defendant for Mr. Harden-Rivera's § 1983 claims.

As will be seen below, the Court nevertheless finds that Mr. Harden-Rivera's complaint against Ms. Kunkle must be dismissed for lack of injury. But regardless of whether Mr. Harden-Rivera was injured, Ms. Kunkle is a proper defendant of the alleged § 1983 violations, despite Mr. Kogut's immunity.

### 2. Constitutional Injury

Under Article III of the Constitution, plaintiffs only have standing to pursue a case if they have suffered an "injury in fact" stemming from the alleged misconduct of the defendant(s). *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Ms. Kunkle claims that because "the criminal prosecution terminated in Plaintiff's favor"—which made the *Heck* bar no longer applicable to the case—Mr. Harden-Rivera "can show no prejudice in this matter as a result of the alleged conspiracy between Kunkle and Kogut." MTD *11. Additionally, she argues that "to the extent that Plaintiff's claims of conspiracy are based on due process, such claims must fail because Plaintiff's criminal prosecution was dismissed." *Id.*

Ms. Kunkle's argument concerning potential due process violations with respect to Mr. Harden-Rivera's criminal case is correct. Even if the decisions to reinstate the previous charges and

to add a new one were purely malicious, the fact that the charges were eventually dismissed means that there was no constitutional injury with respect to Mr. Harden-Rivera's rights as a criminal defendant. *Tully v. Barada*, 599 F.3d 591, 595 (7th Cir. 2010) ("[A] plaintiff cannot initiate a § 1983 claim asserting only that he was summoned and prosecuted without probable cause."); *see also Penn v. Harris*, 296 F.3d 573, 576 (7th Cir.2002) ("[T]here is no constitutional right not to be prosecuted without probable cause." (internal quotations omitted)). If the conspiracy occurred as Mr. Harden-Rivera alleges, then he might reasonably be angry at Ms. Kunkle and Mr. Kogut for wasting his time and requiring him to incur expenses in at least the form of gas money. (At oral argument, Mr. Harden-Rivera represented that defending the reinstated charges required him to drive more than two hours each way to reach the Grundy County Courthouse.) But in constitutional terms, that is not sufficient to allege an injury to Mr. Harden-Rivera's constitutional rights. Mr. Harden-Rivera's exoneration may imply that the criminal charges were meritless, but they also show that he *did* receive the process that was due, and he therefore suffered no constitutional injury. *Tully*, 599 F.3d at 595.

It is a somewhat more difficult question whether Mr. Harden-Rivera has sufficiently alleged an injury with respect to the instant civil case. Ms. Kunkle cites *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020), *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015), and *Bianchi v. McQueen*, 818 F.3d 309, 320 (7th Cir. 2016), for the proposition that "Plaintiff suffered no prejudice as a result of the criminal prosecution." MTD *11. But those cases all examine whether exonerated criminal defendants suffered prejudice from fabrication of evidence or *Brady* violations. The question here is whether Mr. Harden-Rivera suffered any injury *as a civil plaintiff* from Ms. Kunkle and Mr. Kogut's alleged conspiracy. As Mr. Harden-Rivera points out, he has a right of access to the courts under the First and Fourteenth Amendments. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977); *May v. Sheahan*, 226 F.3d 876, 883–84 (7th Cir. 2000). Access-to-courts cases typically involve

– 14 –

prisoner litigants and circumstances not applicable here, but the general right applies broadly to all individuals, whether "free or incarcerated." *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004).

However, the Seventh Circuit and the Supreme Court have firmly established that "denial of access to the courts is not actionable unless the plaintiff has suffered an injury over and above the denial." *Walters v. Edgar*, 163 F.3d 430, 433–34 (7th Cir. 1998) (citing *Lewis v. Casey*, 518 U.S. 343, 352–57 (1996)). In practice, that often means that a plaintiff must be able to allege that the defendant's "blockage prevented him from litigating a nonfrivolous claim." *Id.* And it is on that point that Mr. Harden-Rivera's standing falls apart. Here, Mr. Harden-Rivera has not been blocked from bringing his claims against Coal City and the individual Defendants named in the initial complaint. If this Court had dismissed Mr. Harden-Rivera's complaint pursuant to *Heck*, then he might have suffered a constitutional injury. But that is not what this Court did. While this Court did issue a stay pending resolution of the state criminal case, dkt. 51, the case has not been dismissed (except for the ancillary claims at issue in the instant motions). The stay has since expired, and the case is under active litigation. As such, if the conspiracy happened as alleged, then Mr. Harden-Rivera may have been the victim of unscrupulous litigation tactics, but he did not suffer a constitutional injury. Moreover, no amendment can cure this defect, because the very fact of this case's continued existence fatally undermines Mr. Harden-Rivera's ability to bring § 1983 claims against Ms. Kunkle.

The Court finds that Mr. Harden-Rivera did not suffer a constitutional injury and thus has no standing to bring § 1983 charges against her. The Court dismisses all § 1983 claims against Ms. Kunkle with prejudice.

### B.   The "All Defendants" Counts

As noted above, it is unclear the extent to which the Counts against "All Defendants" apply to Ms. Kunkle. If the headings of the Counts are taken literally, then she is implicated in Count XII (violations of the Illinois Constitution); Count XIII (willful and wanton misconduct); Count XIV

(spoliation inference and sanctions); Count XV (declaratory relief); and Count XVI (injunctive relief). Am. Compl. However, Mr. Harden-Rivera clarified in his response brief that he "does not seek to hold Kunkle responsible for everything that occurred in the criminal matter prior to her appearance in this Court." Pl. Resp. ¶ 15. Upon examination of Mr. Harden-Rivera's amended complaint, the Court finds that Counts XII, XIII, and XIV do not reference any wrongdoing that he alleges Ms. Kunkle committed. Am Compl. ¶¶ 183–200. Count XV, which seeks declaratory relief, pertains to "the policies, practices, and actions taken by law enforcement officers, municipal officials, and prosecutors"—categories in which Ms. Kunkle is not included. *Id.* ¶ 202. Finally, Count XVI, which seeks injunctive relief against future deprivations of civil rights, cannot apply to Ms. Kunkle because she is not a governmental employee and her alleged conspiracy, if it ever existed, has ended. *Id.* ¶ 206–212.

Additionally, with the possible exception of Count XII, the Court does not believe that any amendment could cure the inapplicability of these Counts to Ms. Kunkle, given the lack of any constitutional injury suffered by Mr. Harden-Rivera owing to her actions. Count XII, which describes alleged violations of the Illinois constitution, does not pertain to Ms. Kunkle as currently written, but it is conceivable that Mr. Harden-Rivera could amend the Count to allege an actionable claim against Ms. Kunkle. However, at that point it would be a freestanding state law complaint against Ms. Kunkle grafted on to a broader federal case, and this Court would decline to extend supplemental jurisdiction to any potential cause of action against Ms. Kunkle deriving from the Illinois constitution. *See* 28 U.S.C. § 1367(c). Thus, because amendment would either be futile or insufficient to justify the exercise of supplemental jurisdiction, the Court dismisses the "All Defendants" claims against Ms. Kunkle with prejudice, in addition to its dismissal of the § 1983 claims.

## CONCLUSION

The Court grants Ms. Kunkle's motion to dismiss [84] and denies Mr. Harden-Rivera's motion to reconsider [99]. All charges against Ms. Kunkle are dismissed with prejudice, and all charges against Mr. Kogut remain dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 2/17/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge